UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BENJAMIN WEBBER, ELIZABETH BRANN and WILLIAM BRANN, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs )<br><br>v. )<br><br>FINANCE AUTHORITY OF MAINE, )<br><br>EDWIN R. DAGGETT, JR., )<br><br>DAGGETT & PARKER, and )<br><br>ANN QUINLAN in her official capacity as Maine State Court Administrator, )<br><br>Defendants ) | CLASS ACTION COMPLAINT, DEMAND FOR JURY TRIAL AND INJUNCTIVE RELIEF |

**INTRODUCTION**

This case is about a scheme to collect zombie student loan debt by the Finance Authority of Maine and its agents using unfair practices in violation of its contract with borrowers, the Student Loan Bill of Rights, and federal and state law.

The collection scheme uses false, deceptive, and misleading representations about the character and amount of the student debt, and unfair means to collect it in Maine courts. FAME is suing student borrowers on debt that was written off over a decade ago and assigned to Transworld Systems Inc., a company the U.S. Consumer Financial Protection Bureau[1] cited for massive unfair and deceptive student debt collection practices across the country.

---

[1] In the Matter of Transworld Systems, Inc., 2017-CFPB-0018 Filed 09/18/2017

.

What is false about the lawsuits brought by FAME against student borrowers is the assertion that "the contract rate" of interest is fixed after default, and that the agency maintains contemporaneous accurate business records.

What is deceptive about the class of lawsuits brought by FAME against student borrowers in this assertion that the "collection fee" is relatively low, when in fact because of the magic and strategic use of compound interest it is excessively high.

In the lawsuit brought by FAME against plaintiffs, for example, it states the "collection fee" is $2836.17, however because $3215 was added to the principal amount retroactively to 2012, with interest compounding at the rate of 8.45% the "collection fee" is $8500.

What is unfair about the lawsuits brought by FAME is student borrowers getting the run-a-round but not getting credited for payments they made.

The scheme involves defendants wrongfully siphoning off plaintiffs' tax credits, and making false, deceptive, and misleading representations in court documents to unfairly pressure student borrowers to consent to judgement, an outcome that causes lasting financial harm.

The case also alleges an ongoing violation of the First Amendment to the United States Constitution by the Maine State Court Administrator for denying plaintiffs access to the civil proceedings and public records in eCourt that pertain to other lawsuits brought by FAME and Debt Collectors against Maine students and seeks prospective injunctive relief pursuant to *Ex parte Young*.

**JURISDICTION AND VENUE**

1. The grounds for the Court's jurisdiction are 28 U.S.C. §1331 because the action arises under the Constitution and the laws of the United States, and 42 U.S.C. §1983 and 15 U.S.C. §1692 et seq.

2. The Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

3. Venue is proper pursuant to 28 U.S.C. §1391 because all the defendants reside in the district.

**PARTIES**

4. Plaintiffs Benjamin Webber and his parents Elizabeth Brann and William Brann are Maine residents who signed a promissory note, The Maine Loan, (TML) offered by the Maine Educational Loan Authority on September 2, 2006, for $10,000, a copy of which is filed herewith as **Exhibit A**, the terms of which are incorporated herein.

5. Plaintiffs are representative of a class of similarly situated student borrowers who signed a TML that was assigned to Transworld Systems Inc. and are presently being sued or have been sued by FAME and/or its Debt Collectors in Maine courts in violation of fair debt collection laws and the Student Loan Bill of Rights, and in breach of the terms of the TML contract.

6. Plaintiffs also are representative of a similarly situated class whose access to public proceedings and records related to lawsuits brought by FAME based on zombie TML loans is being denied by the Maine State Court Administrator in violation of First Amendment rights.

7. Plaintiffs seek prospective injunctive relief to access e-courthouse files and shine light on an unchecked fortressed bureaucracy.

8. The Finance Authority of Fame (FAME) is an instrumentality of the State of Maine and the successor to the Maine Educational Loan Authority (MELA) pursuant to 20-A M.R.S. §11414.

9. FAME/MELA may be sued on written contracts and under Maine's Freedom of Access Act, Administrative Procedures Act, and Tort Claims Act pursuant to 20-A M.R.S. §11417(K).

10. FAME is a Student loan servicer subject to the Maine Student Loan Bill of Rights, 9-A M.R.S. §14-101 et seq.

11. Ann Quinlan is the State Court Administrator for the State of Maine and sued in her official capacity for prospective injunctive relief.

12. Edwin R. Daggett, Jr. and Daggett and Parker ("Debt Collectors") are agents of FAME and debt collectors as defined in 15 U.S.C. §1692a and 32 M.R.S. §11002.

**SUMMARY OF FACTS**

13. Before its merger with FAME, MELA lent thousands of Maine students millions of dollars for higher education using The Maine Loan, a contract that says the interest rate is

based on the bond that funded the loan from year to year, or the one-year Treasury rate, and limits collection costs to reasonable amounts incurred, among other things.

14. The public policy purpose of The Maine Loan program was to help eligible students earn a degree with a low interest, fair loan.

15. All the TML loans in question were written off by MELA before the merger and assigned to Transworld Systems, Inc., including plaintiffs' on or about April 2012.

16. While Transworld Systems Inc. was servicing plaintiffs' loan on behalf of FAME/MELA, it did not keep accurate records and otherwise engaged in unfair and unlawful debt collection practices.

17. After the merger, FAME and/or Debt Collectors serviced the TML loans that are now being used in lawsuits against student borrowers including the plaintiffs.

18. Funding sources for the TML program include Student Loan Revenue Bonds issued by FAME/MELA, as well as Nonlapsing revolving funds created by the legislature, such as The Blaine House Scholars Fund.[2]

19. FAME/MELA bonds have varying durations and maturity dates, for example the 2002 $9,000,000 Bond Series MELA 02A-1 matured on May 1, 2009, after 10 years and was not refunded.

20. As a servicer FAME and/or its Debt Collectors did not adequately integrate records related to The Maine Loan program into its own records, did not review, verify, or establish the accuracy of the contents of the records before it sued plaintiffs, and

---

[2] See Public Laws, State of Maine, 116th Legislature 1993, Sec. EEEE-4. 20-A MRSA §12509

unreasonably relied on untrustworthy information in the servicing and collecting of debts after the merger.

21. FAME does not know the funding source of the TMLs it acquired in the merger that had been assigned to Transworld Systems, Inc. and are now the subject of collection lawsuits in Maine courts.

22. In its lawsuits against student borrowers FAME and the Debt Collectors misrepresent that there is a "program policy" that allows it to charge an interest rate of 8.5% (or some fixed rate) on defaulted TML debt.

23. Plaintiff made a regular payment on January 30, 2012, and his TML loan was assigned to Transworld Systems, Inc. on or about March 30, 2012

24. FAME and/or Debt Collectors do not credit plaintiffs with at least two payments, one made on or about May 22, 2015, in the amount of $541.25, and another made on May 31, 2016, for $181.50 and otherwise misrepresent the amount and character of the debt.

25. Plaintiff Webber used two TMLs to help fund attending college at the University of Southern Maine at Gorham.

26. The first $10K TML loan was paid off in full.

27. The second $10K TML loan is presently the subject of a lawsuit brought by FAME and/or the Debt Collectors against plaintiffs in Androscoggin County Superior Court, Docket No LEWDC-CV-2023-289

28. Between September 2011 and the present, over $10,000 has been paid towards plaintiffs' TML loan that is the subject of this case and the lawsuit FAME/Debt Collectors filed against plaintiffs.

29. In December 2022 Plaintiff Webber received a communication from Debt Collectors on behalf of FAME, and he responded with a letter dated December 19, 2022, stating his dispute with the amount of the debt and requesting verification. A copy of the letter is filed herewith as **Exhibit B.**

30. Between 2015 and the present, FAME has offset plaintiffs' state income tax credits by approximately $6000, including an offset of $287 on April 10, 2024.

31. FAME describes the character of plaintiffs' debt as "liquidated" to State of Maine Revenue Services, and as a "Blaine House Scholarship Loan."

32. FAME and/or Debt Collectors sued plaintiffs in July 2023 using a form of Complaint it employs in all cases involving The Maine Loan issued by MELA. Filed herewith as **Exhibit C** is FAME's Complaint.

33. The Complaint is false, misleading, and unfair because it refers to a "contract interest rate" of 8.45% and a "collection fee" of $2836. In fact, the contract interest rate is variable and much lower, and the true "collection fee" is over $8500 because $3215 was added to principle **beginning in 2012** and compounded interest thereon at 8.5% for 12 years.

34. In all the collection lawsuits brought by FAME and/or its Debt Collectors based on a TML issued by MELA that was assigned to Transworld Systems Inc. and later to FAME at the merger, an affidavit is filed with the court in the form used in the lawsuit brought by FAME against plaintiffs, a copy of which is filed herewith as **Exhibit D**.

35. The affidavit is false, misleading, and unfair because FAME's witness does not have personal knowledge of plaintiffs' account, and the records attached are not kept in the regular course of FAME's business and were not contemporaneously made.

36. The affidavit is false, misleading, and unfair because "the statement detailing" the alleged balance due of $21,228.19 does not include all payments received, or the correct capitalization of interest, among other misrepresentations about the amount and character of the debt.

37. FAME and/or Debt Collectors are suing plaintiffs in Lewiston District Court, an "eCourt."

38. Androscoggin County Superior Court, where FAME/Debt Collector's lawsuit against plaintiffs is scheduled to be tried, is also a Maine eCourt.

39. The State Court Administrator is responsible for implementing the eCourt system, including designating all the other lawsuits brought by FAME against student borrowers on zombie debt as "confidential" and therefore inaccessible to plaintiffs and the public.

40. Maine eCourts do not maintain paper case files of accessible public records or hold public proceedings. Instead eCourt maintains electronic case files and holds many proceedings, including disclosure hearings used as part of the scheme to unfairly pressure student borrowers, via Zoom or other software.

41. FAME and/or the Debt Collectors are suing multiple student borrowers in eCourt, including plaintiffs to collect stale TML debt in Maine's eCourts based on shoddy evidence.

42. The State Court Administrator is denying plaintiffs access to the public records and proceedings related to the lawsuits brought by FAME and/or the Debt Collectors against all other student borrowers.

43. The State Court Administrator denies plaintiffs access to the public records and proceedings of other lawsuits brought by FAME and Debt Collectors against student

borrowers by implementing a policy of marking documents and proceedings "confidential" instead of "non-confidential" in the eCourt system, thereby limiting access to parties only.

44. The State Court Administrator denies plaintiffs access to the public records and proceedings of other lawsuits brought by FAME and Debt Collectors against student borrowers by implementing a policy that charges a fee and requires the completion of a bureaucratic form to simply look at complaints filed in state courts by a state agency.

45. There is no rational basis for denying public access to lawsuits brought by FAME and/or Debt Collectors against student borrowers in Maine's eCourt system.

46. There is no compelling state interest in keeping records and proceedings related to lawsuits brought by FAME and the Debt Collectors against Maine student borrowers including the plaintiffs confidential.

47. It is an undue burden and chilling of free speech rights of student borrowers for the State Court Administrator to charge plaintiffs a fee to inspect or witness public documents or public proceedings.

48. It not overly burdensome for the State Court Administrator to make public records "non-confidential" in the eCourt system.

**COUNT ONE – FIRST AMENDMENT v. STATE COURT ADMINISTRATOR**

49.  Under color of state law, the State Court Administrator is depriving plaintiffs of rights, privileges and immunities secured by the First Amendment to the Constitution by denying access to public records and proceedings of the other lawsuits brought by FAME in the Maine eCourt system causing substantial harm in violation of 42 U.S.C. §1983.

50. Plaintiffs seek prospective injunctive relief against the State Court Administrator in her official capacity pursuant to Ex Parte *Young*.

**COUNT TWO – FAIR DEBT COLLECTION PRACTICES ACTS**

51. As described herein FAME and the Debt Collectors violated plaintiffs' rights as established in federal and state fair debt collection practices acts. 15 U.S.C. §1692 et seq. and 32 M.R.S. §11001 et seq.

52. Acts committed by FAME and Debt Collectors in violation of federal and state fair debt collection laws include but are not limited to making false, misleading and deceptive representations of the character, amount or legal status (i.e. "liquidated") of plaintiffs' TML student debt. 15 U.S.C. §1692e; 32 M.R.S. §11013(2)

53. Unfair acts committed by FAME and Debt Collectors in violation of federal and state fair debt collection laws include but are not limited to charging and collecting fees and interest not expressly allowed by the TML contract, not crediting payments, offsetting tax credits, and using false and misleading documentation in lawsuits. 15 U.S.C. §1692f; 32 M.R.S. §11013(3)

54. FAME and/or Debt Collectors violated 15 U.S.C. §1692g and 32 M.R.S. § 1101(2) by offsetting tax credits and otherwise unfairly collecting debt after plaintiffs disputed it in December 2022, and asked for verification.

**COUNT THREE – STUDENT LOAN BILL OF RIGHTS/MAINE UNFAIR TRADE**

55. FAME is a Student loan servicer under Maine's Student Loan Bill of Rights. 9-A M.R.S. §14-103; 9-A M.R.S. §14-107.

56. FAME and Debt Collectors are persons subject to the Maine Unfair Trade Practices Act.

57. Debt Collectors are FAME's agents.

58. By directly or indirectly employing a scheme to defraud or mislead student loan borrowers, FAME and its agents violated 9-A M.R.S. §14-108(3) and the Unfair Trade Practices Act

59. The scheme is to make more money off the backs of Maine student borrowers by reviving debt from the dead with lawsuits using false and misleading documents.

60. Complaints and affidavits used by FAME in the lawsuits purport to show "business records" evidence of material facts but they are charts that were created by witnesses without personal knowledge based on unreliable and inaccurate information for the purpose of litigation.

61. By committing the aforementioned acts, FAME and Debt Collectors have violated the Maine Student Bill of Rights and Maine's Unfair Trade Practices Act. 5 M.R.S. §205-a; 5 M.R.S. §213

62. On October 25, 2024, plaintiffs tendered a demand for relief pursuant to 5 M.R.S. §213(1-A)

**COUNT FOUR – BREACH OF CONTRACT**

63. FAME/MELA are liable in court for breach of written contracts including the TML loans. 20-A M.R.S. §11417(1)(K).

64. FAME has breached the material terms of the TML loan by charging and collecting 8.45% interest contrary to the terms of the note, not properly crediting payments, offsetting tax refunds, charging excessive collection fees, and using false and deceptive documents in court proceedings.

65. FAME's breach of contract has caused plaintiffs' substantial harm.

**DEMAND FOR JURY TRIAL**

66. Plaintiffs hereby demand a trial by jury on all claims allowed under the law.

**CLASS ACTION – FEDERAL RULES OF CIVIL PROCEDURE RULE 23**

67. Plaintiffs are representative of a class of student borrowers that is so numerous joinder is impracticable.

68. The class includes student borrowers sued by FAME and/or the Debt Collectors on debt arising from promissory notes in the form of Exhibit A, i.e. "The Maine Loan" that were assigned to Transworld Systems Inc. and are or were the object of lawsuits brought by FAME and/or the Debt Collectors in Maine state court based on the form of complaint and affidavit as Exhibits C and D.

69. There are questions of law or fact common to the class, such as whether the First Amendment to the U.S. Constitution gives plaintiffs the right to access public documents and proceedings on the Maine eCourt system, whether the terms of The Maine Loan are ambiguous, how the TML interest rate is supposed to be calculated per the contract, and how it actually was for members of the class.

70. The claims of Benjamin Webber and Elizabeth and William Brann are typical of the claims of the class. The same contract is involved. The same interest rate calculation is a term that was breached by FAME that caused measurable damage.

71. Plaintiffs will fairly and adequately protect the interest of the parties.

72. Prosecuting separate actions by individual class members would create a risk of inconsistent standards, the Maine State Court Adminostrator has refused plaintiffs access to eCourt public records and proceedings related to FAME lawsuits against student borrowers on grounds that generally apply to the class so final prospective injunctive relief is appropriate.

73. A class action in this Court is superior to other methods of fairly and efficiently adjudicating the controversy.

**WHEREFORE** plaintiffs respectfully request a declaration that plaintiffs' rights under the First Amendment to the U.S. Constitution are being violated by the State Court Administrator for the reasons stated herein, and for such prospective injunctive relief it deems just and appropriate, costs and attorney's fees.

**AND FURTHER,** plaintiffs respectfully request certification of the class, entry of judgment on all Counts, an injunction, prejudgment interest, civil penalties, damages, punitive damages, costs, attorney's fees, and all other relief this Honorable Court deems just and appropriate.

Dated November 25, 2024         */s/ Cynthia A. Dill*
                                Attorney for Plaintiffs
                                Maine Bar #7055

The Law Office of Cynthia Dill

1227 Shore Road  
Cape Elizabeth, Maine 0107  
207-747- 4172  
cynthia@dillesquire.com